UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
WESTON FUNDING, LLC

|  |  |
|---|---|
| Plaintiff, | 05 Civ. 9830 (RWS) |
|  | ECF CASE |
| -against- | **AFFIDAVIT OF JOHN R. LIEGEY** |

CONSORSIO G GRUPO DINA, S.A. de C.V.

Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

JOHN R. LIEGEY, being duly sworn deposes and says under penalty of perjury:

**BACKGROUND**

1.  I am the sole member and President of Weston Funding, LLC ("Weston"), plaintiff herein.

2.  As of the date of the commencement of this action, Weston was the owner of Five-Million Two-Hundred and Twenty-One Thousand dollars ($5,221,000.00) of securities (the "Debentures") (The certificate representing the Debentures is annexed as Exhibit A hereto) purchased pursuant to the terms of the Consorcio G Grupo Dina, S.A. de C.V. ("Dina") Indenture dated as of August 8, 1994 as amended by the First Supplemental Indenture dated as of May 15, 2003 (the "Indenture"). The Indenture is annexed hereto as Exhibit B.

3.  Pursuant to the terms of the Indenture and the Promissory Note entered into to secure the payment due under the Debentures (the "Note") the securities matured on August 8, 2004 (the "Maturity Date") at which time the terms of both the Indenture and the Note called for payment of all principal and interest to the bond/note holders.

4.   Since January 2001 and continuing to date, Dina has failed to make interest payments when due on the Debentures and ultimately failed to pay the principal and interest due on the Maturity Date and Dina currently remains in default on the Indenture and the Note.

## THE TRUSTEE AND AGENT FOR SERVICE OF PROCESS

5.   On or about June 4, 1999, Deutsche Bank A.G., a holding company, acquired Bankers Trust Company ("BTC").  On or about April 15, 2002, BTC, the Indenture Trustee and the agent for service of process designated by the terms of the Indenture, amended its certificate of organization and filed with the New York State Department of State a name change, changing its name to Deutsche Bank Trust Company Americas ("DBTCA").  DBTCA continued to operate as a New York State Banking Corporation under the very same charter pursuant to which BTC operated prior to the name change.  Accordingly, as is described in Dina's securities exchange offering documents, DBTCA is the same entity as BTC simply operating under a different name, thus making DBTCA the trustee and the agent for service of process under the Indenture.  Annexed hereto as Exhibit C is an excerpt from Deutsche Bank's website describing its acquisition of BTC.

6.   Even if DBTCA had not acquired BTC and changed its name, Section 611 of the Indenture itself makes clear that DBTCA replaced BTC as Dina's agent for service of process:

> Every successor Trustee appointed hereunder shall execute, acknowledge and deliver to the Company and to the retiring Trustee an instrument accepting such appointment, and thereupon the resignation or removal of the retiring Trustee shall become effective and such successor Trustee, without any further act, deed or consequence, shall become vested with all the rights, powers, trusts, and duties of the retiring Trustee....

Here, whether or not such instrument was executed, there is no dispute that DBTCA is the Trustee and as such whether merely the same entity as BTC or as successor Trustee, DBTCA would step into the shoes of BTC for all purposes under the terms of the Indenture, including as agent for service of process.  Consistent with this position is Dina's acknowledgements in various securities

2

exchange offering documents that DBTCA assumed BTC's former role as trustee for the

Debentures:

> ...the indenture dated as of August 8, 1994, as amended by the First Supplemental Indenture dated as of May 15, 2003, between Dina and Deutsche Bank Trust Company Americas, formerly known as Bankers Trust Company, as trustee (the "Debentures Trustee")...

(emphasis added)  See Letter of Transmittal annexed hereto as Exhibit D.

and:

> Deutsche Bank Trust Company Americas, formerly known as Bankers Trust Company, a New York banking corporation, with its principal trust office in New York, New York, is the Debentures Trustee under the Debentures Indenture and has been appointed by Dina as Registrar and Paying Agent with regard to the Debentures.

(emphasis added)  See Offer to Exchange, excerpts annexed hereto as Exhibit E.[1]

Here, whether by virtue of a succession under Section 611 of the Indenture or the unassailable fact

that DBTCA is simply the new name for BTC, it is clear that DBTCA is the Trustee under the

indenture and Dina's agent for service of process.

7.   To that end, my attorneys have advised me that Weston properly served its complaint

pursuant to the Federal Rules of Civil Procedure by personally serving Stanley Burg of DBTCA in

the Securities Services division on November 22, 2005.  The Affidavit of Service of Michael J.

Motto, dated November 23, 2005 is annexed hereto as Exhibit F.

8.   Indeed, Mr. Burg even confirmed that he was served with the Complaint in e-mail

correspondence dated November 29, 2005, wherein he stated that DBTCA was served with the

Complaint.  See November 29, 2005 correspondence annexed hereto as Exhibit G.[1]

---

[1]Although the initial complaint may have incorrectly identified Deutsche Bank A.G. and not DBTCA as the successor trustee for BTC, this is of no moment as DBTCA was the actual entity served and the amended complaint corrected this clerical error.

**STANDING TO BRING THIS ACTION**

9. The terms of the Indenture clearly give Weston the right to bring the instant action. More importantly, even if the terms of the Indenture did not give Weston the right to proceed as it has, upon information and belief this litigation is certainly proper under the terms of the Note. I say "upon information and belief" because the Note was held by BTC (now DBTCA) but I was told that it was among the documents lost when BTC's trust files were destroyed on September 11, 2001 at BTC's offices adjacent to the World Trade Center complex in New York City. I have requested that the Trustee obtain a copy of this Note from Dina but have not yet received the copy requested.

**SENIOR INDEBTEDNESS**

10. I understand that Dina has also raised the issue of the supposed priority of certain Senior Indebtedness. Upon information and belief, to date, DBTCA as Trustee has not received any notice that any of the Senior Indebtedness is in default or the subject of a judicial proceeding with respect to any such default, nor has DBTCA given notice to any holders of the Dina Debentures of such default. As a holder of the Debentures I can attest to the fact that Weston has received no notice that any Senior Indebtedness is in default. Thus, if the Senior Indebtedness is indeed in default, Dina has failed to comply with the requirements of Section 1210 of the Indenture, (Exhibit B) and thus cannot now belatedly assert such default as a basis for Dina's failure to pay the Debenture holders. Of course, it is Weston's position that no notice of default on the Senior Indebtedness was provided because, in fact, the Senior Indebtedness is not in default.

11. Even if the Senior Indebtedness were in default and notice thereof had been properly given, it should not affect Weston's ability to bring this claim for several reasons, including but not limited to the fact that the holders of the Senior Indebtedness are all (or mostly all) Dina insiders

4

who have acted in bad faith in putting the Senior Indebtedness in default.[2]  In particular, as is detailed more fully in Weston's proposed amended complaint, Dina insiders who own or control approximately 96% of the equity in Dina, also effectively placed themselves in the position of both holding and controlling all (or almost all) of the Senior Indebtedness, then diverting funds which Dina recovered from various transactions (including certain proceeds of the Motor Coach Industries sale to Joseph Littlejohn and Levy, Inc. ("JLL") (now known as JLL Partners)) to themselves rather than paying off the existing debt and/or using the funds to prevent the accrual of additional liability.  Dina compounded its malfeasance by then having the insiders pay off Dina debt or loan money to Dina subsidiaries, which Dina then categorized as "Senior Indebtedness" only to allegedly "default" on this new Senior Indebtedness now using this default as the reason why it is not currently in default on the Debentures which are subordinate to the Senior Indebtedness.  Dina should not be permitted to benefit from this type of crass manipulation.

12. Upon information and belief, Dina made other transfers without fair consideration to various members of the Gomez-Flores family and/or entities owned or controlled by the Gomez-Flores family, including but not limited to transfers of assets to one or more entities owned by Senator Raymundo Gomez-Flores, the patriarch and leader of the Gomez-Flores family controlled entities and a politically influential government official.

13. Upon information and belief, neither DBTCA, Weston nor any other Debenture holder has been provided with any audited financial statements from Dina since 2002.  The last set of unaudited financial statements received by DBTCA (and therefore Weston) was for the period ending September 2004. Upon information and belief, since September 2004 neither DBTCA nor

---

[2] Weston respectfully refers the Court to Weston's proposed amended complaint submitted herewith, which sets forth in further detail the allegations regarding conduct in this regard.

Weston nor any other Debenture holder has received any financial statements from Dina, audited or unaudited.

14. Regardless of the status of the Senior Indebtedness, it is my understanding that Section 508 of the Indenture provides for Weston's absolute and unconditional right to sue for payment of principal and interest on its Debentures and that Weston's right to sue is not restricted under the terms of the Debentures or the Note.[3]

15. Section 508 of the Indenture provides Debenture holders with the "right, which is absolute and unconditional...to institute suit for the enforcement of any such payment" of principal and interest without first resorting to demand letters to the trustee.

16. Of course, even without the benefit of Section 508 of the Indenture, Weston has complied with the requirements of Section 507 of the Indenture which requires any Holder to seek a remedy from the Trustee, and follow the Trustee's process, before it has any right to "institute any proceeding, judicial or otherwise, with respect to this Indenture, or for the appointment of a receiver or trustee, or for any other remedy hereunder..." Pursuant to Section 507 of the Indenture, the right to sue only arises when:

> (1) the Holder has given notice of the Event of Default to the Trustee; (2) the Holders of not less than 25% of the Outstanding Securities shall have made a written request to the Trustee to begin a lawsuit; (3) the Holder has offered to the Trustee a reasonable indemnity against the costs of such litigation; (4) after 60 days from receipt of such notice, the Trustee has failed to begin proceedings; and (5) no majority of Holders of the Outstanding Securities has requested that the Trustee act otherwise.

At my direction, Weston complied with these requirements. LMT Capital Management, LLC, a funds management company (of which I am also the Chairman and Chief Executive Officer), a sister entity of Weston Funding, LLC  acting on Weston's behalf and on behalf of three additional

---

[3] Although on their face, the Debenture certificates indicate that the owner of the Debentures is "Western" Funding LLC, Weston Funding LLC is the actual owner. If necessary, Weston can provide additional documentation to prove its ownership and that the discrepancy is nothing more than a typographical error.

bond/note holders, who together held at the time 25.9% of the $24,445,000 outstanding Debentures

which to date remain outstanding (i.e., have not been exchanged pursuant to one of the two

exchange offers), sent formal notice to DBTCA's Trust Services division pursuant to Section 507

of the Indenture on August 3, 2005, complying with elements (1), (2), (4), and (5). See Exhibit B.

Although the August 3, 2005 letter neglected the third element of offering the Trustee an indemnity

against the costs of such litigation, this deficiency was subsequently corrected in a more detailed

follow-up letter dated October 21, 2005.  See Exhibits H and I, respectively.  Together, the letters

fully satisfy all of the Indenture's Section 507 requirements. [4]

17. In telephone conversations with Mr. Burg and his counsel, Peter Baumgaertner of

LeBeouf, Lamb, Green & MacRae LLP, following my delivery to Mr. Burg of the above

referenced correspondence, Mr. Burg informed me that the trustee would not at that time

commence litigation to enforce the rights of the bond/note holders under the Indenture but that

Weston and the other bond/note holders were free to pursue litigation on their own.

18. Dina's arguments about Plaintiff using the lawsuit as leverage and its purported concern

that Weston not gain an advantage over the rights of other Debenture holders are nothing more than

a smoke screen intended to divert the Court's attention from the fact that not only has Dina refused

to meet its obligations to its creditors, but Dina's failure is in large part the direct result of its own

misconduct and intentional behavior.

19. Attached hereto as Exhibit J is a proposed amended complaint Weston seeks leave of

this Court to file.

---

[4]  Exhibits H and I erroneously state that the notice is provided on behalf of holders of the 26.05% of the $24,261,0000 outstanding debentures when in fact it should have stated that it was provided on behalf of 25.9% of the $24,445,00 outstanding Debentures.  In any case, the notice was provided on behalf of represented more than the requisite 25% of the holders of the-then outstanding Debentures.

## CONCLUSION

For the forgoing reasons, Weston respectfully requests that the Court deny Dina's motion to dismiss in its entirety and allow Weston to amend its complaint as well as any additional relief the Court deems just and proper.

Dated: New York, New York
February 23, 2006

_____
JOHN R. LIEGEY

Sworn to before me this
23rd day of February, 2006

_____
Notary Public

**MATTHEW SHEPPE**
**Notary Public, State of New York**
**No. 02SH6090717**
**Qualified in New York County**
**Commission Expires April 21, 2007**

8

EXHIBIT C

## Acquisition of Bankers Trust Successfully Closed

Six months after announcement of the planned acquisition on 30 November 1998, Deutsche Bank closes the transaction on schedule today, 4 June 1999 (closing day). Deutsche Bank is buying all outstanding shares of Bankers Trust for roughly US$ 9 billion. The purchase price will be paid to a trustee who will handle the settlement process for the surrendered Bankers Trust shares at US$ 93 per share.

After Bankers Trust shareholders approved the transaction by a large majority and all necessary approvals were received from the relevant regulatory authorities, the acquisition becomes effective on 4 June 1999. Bankers Trust will now rapidly be integrated into Deutsche Bank. It is planned to submit the first consolidated figures as of 30 June 1999.

An Implementation Review Committee is being created to guarantee successful realisation of the Bankers Trust integration planning and to ensure that the targeted synergies are achieved. It will be headed by Board Spokesman Dr. Rolf-E. Breuer to make sure that necessary decisions can be taken quickly.

EXHIBIT D

STRICTLY CONFIDENTIAL

LETTER OF TRANSMITTAL AND WAIVER

# Consorcio G Grupo Dina, S.A. de C.V.

in Respect of

**Offer to Exchange Any and All of the Outstanding
8% Convertible Subordinated Debentures Due August 8, 2004 (the "Debentures")
for Contingent Value Rights (the "CVRs")
and
Solicitation of Waiver to Debentures and Related Indenture**

**Pursuant to the Offer to Exchange and Related Waiver Solicitation Statement
Dated June 7, 2005 (the "Statement")**

---

THE EXCHANGE OFFER WILL EXPIRE AT 5:00 P.M., NEW YORK CITY TIME, ON
WEDNESDAY, JULY 6, 2005 UNLESS EXTENDED (SUCH DATE, AS THE SAME MAY BE
EXTENDED, THE "EXPIRATION DATE").

---

June 7, 2005

*Exchange Agent*

**The Bank of New York**

| | |
|---|---|
| *By Registered or Certified Mail or Hand Delivery:* | *By Facsimile Transmission:* |
| The Bank of New York | (For Eligible Institutions only) |
| Corporate Trust Operations | (212) 298-1915 |
| Reorganization Unit | Confirm by telephone: |
| 101 Barclay Street - 7 East | (212) 815-5788 |
| New York, NY 10286 | |
| Attention: William Buckley | |

DELIVERY OF THIS LETTER OF TRANSMITTAL AND WAIVER TO AN ADDRESS OTHER THAN AS
SET FORTH ABOVE, OR TRANSMISSION OF INSTRUCTIONS VIA FACSIMILE OTHER THAN AS SET
FORTH ABOVE, DOES NOT CONSTITUTE A VALID DELIVERY.

The undersigned acknowledges that he or she has received the Offer to Exchange and Related Waiver
Solicitation Statement, dated June 7, 2005 (the "Statement") of Consorcio G Grupo Dina, S.A. de C.V., a
corporation (*sociedad anónima de capital variable*) organized under the laws of Mexico ("Dina"), and this Letter of
Transmittal and Waiver, which together constitute Dina's offer (the "Exchange Offer") to exchange all of its
outstanding 8% Convertible Subordinated Debentures Due August 8, 2004 (CUSIP Number 210306 AB 2) for
Contingent Value Rights (CUSIP Number 210306 11 4).

**THE INSTRUCTIONS CONTAINED HEREIN SHOULD BE READ CAREFULLY BEFORE THIS
LETTER OF TRANSMITTAL AND WAIVER IS COMPLETED.**

Capitalized terms used but not defined herein have the meanings given to such terms in the Statement.

This Letter of Transmittal and Waiver is to be completed and delivered to The Bank of New York, as Exchange Agent (the "Exchange Agent"), by physical certificate holders of Debentures who wish to tender all or part of their Debentures in the Exchange Offer. Tenders of Debentures held through the facilities of The Depository Trust Company shall be made by book-entry transfer to an account maintained by the Exchange Agent, at The Depository Trust Company pursuant to the procedures set forth in the Statement. Holders may not tender their Debentures by guaranteed delivery unless Dina agrees.

### DELIVERY OF DOCUMENTS TO THE BOOK-ENTRY TRANSFER FACILITY DOES NOT CONSTITUTE DELIVERY TO THE EXCHANGE AGENT.

### NOTE: SIGNATURES MUST BE PROVIDED BELOW
### PLEASE READ THE ACCOMPANYING INSTRUCTIONS CAREFULLY

To validly tender Debentures in physical certificate form, the holder of the Debentures should complete the appropriate boxes below and sign this Letter of Transmittal and Waiver to indicate the action the holder desires to take with respect to the Exchange Offer. List below the Debentures to which this Letter of Transmittal and Waiver relates. If the space provided below is inadequate, the certificate numbers and principal amount of Debentures should be listed on a separate schedule affixed hereto.

| DESCRIPTION OF DEBENTURES | (1) | (2) | (3) |
|---|---|---|---|
| Name(s) and Address(es) of Registered Holder(s) (Please fill in, if blank)* | Certificate Number(s) | Aggregate Principal Amount of Debentures | Principal Amount of Debentures Tendered (if less than all)** |
| | | | |
| | | | |
| | | | |
| \* The name(s) and address(es) of the registered holders of the Debentures tendered hereby should be printed as they appear on the Debentures. | | | |
| \*\* Debentures may be tendered in whole or in part in integral multiples of $1,000. Unless this column is completed, a holder will be deemed to have tendered the full aggregate principal amount of the Debentures represented by the Debentures indicated in column (2). | | | |

**PLEASE SIGN HERE**
**(TO BE COMPLETED BY ALL TENDERING HOLDERS)**
(Complete accompanying Substitute Form W-9)

X _____     Date: _____, 2005

X _____     Date: _____, 2005
   Signature(s) of Owner

   The above lines must be signed by the registered holder(s) exactly as their name(s) appear(s) on the Debentures, or by person(s) authorized to become registered holder(s) by a properly completed bond power from the registered holder(s), a copy of which must be transmitted with this Letter of Transmittal and Waiver. If Debentures to which this Letter of Transmittal and Waiver relates are held of record by two or more joint holders, then all such holders must sign this. If signature is by a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation or other person acting in a fiduciary or representative capacity, then please set forth the full title of the person signing in such capacity. See Instruction 4.

Name(s): _____

_____
   (Please Type or Print)

Capacity: _____

Address: _____

_____
   (Including Zip Code)

Area Code and Telephone
Number: _____

Tax Identification or
Social Security Number(s): _____

**SIGNATURE GUARANTEE**
**(If required by Instruction 4)**

Signatures Guaranteed
by an Eligible Institution: _____
   (Authorized Signature)

_____
   (Name and Title)

_____
   (Name of Firm)

_____
   (Address and Telephone Number)

Dated: _____, 2005.

3

| **SPECIAL ISSUANCE INSTRUCTIONS** (See Instructions 4 and 5) | **SPECIAL DELIVERY INSTRUCTIONS** (See Instructions 4 and 5) |
|---|---|
| To be completed ONLY if certificates for Debentures not exchanged and/or CVRs and waiver payment are to be issued in the name of and sent to someone other than the person or persons whose signature(s) appear(s) on this Letter of Transmittal and Waiver above. | To be completed ONLY if certificates for Debentures not exchanged and/or CVRs and waiver payment are to be sent to someone other than the person or persons whose signature(s) appear(s) on this Letter of Transmittal and Waiver above or to such person or persons at an address other than shown in the box above entitled "Description of Debentures." |
| Issue CVRs (together with waiver payment) and/or Debentures to: | Deliver CVRs (together with waiver payment) and/or Debentures to: |
| Names(s): ................................................ (Please Type or Print) | Names(s): ................................................ (Please Type or Print) |
| ................................................ (Please Type or Print) | ................................................ (Please Type or Print) |
| Address: ................................................ ................................................ (Zip Code) | Address: ................................................ ................................................ (Zip Code) |
| Telephone Number: ................................................ Tax Identification or Social Security Number(s): ................ | Telephone Number: ................................................ Tax Identification or Social Security Number(s): ................................................ |
| (Complete Substitution Form W-9) | |

**IMPORTANT: TO VALIDLY TENDER DEBENTURES IN PHYSICAL CERTIFICATE FORM, THIS LETTER OF TRANSMITTAL AND WAIVER OR A FACSIMILE HEREOF (TOGETHER WITH THE CERTIFICATE(S) FOR DEBENTURES AND ALL OTHER REQUIRED DOCUMENTS) MUST BE RECEIVED BY THE EXCHANGE AGENT PRIOR TO 5:00 P.M., NEW YORK CITY TIME, ON THE EXPIRATION DATE.**

## INSTRUCTIONS

### 1. General

The CVRs offered in the exchange offer referred to herein have not been and will not be registered under the Securities Act or any state securities laws. Accordingly, the CVRs are being offered in exchange for Debenture Holders only to Debenture Holders in reliance upon an exemption from registration provided by Section 3(a)(9) of the Securities Act and similar exemptions from registration provided by certain state securities laws. The CVRs will not be listed on any securities exchange or quoted through any automated quotation system.

To validly tender Debentures in physical certificate form, the holder of Debentures must deliver to the Exchange Agent (i) a properly completed and duly executed Letter of Transmittal and Waiver (or facsimile thereof), with any required signature guarantees, (ii) all certificates representing the Debentures to be tendered pursuant to the Exchange Offer, (iii) a Substitute Form W-9 (or facsimile thereof) and (iv) any other documents required to be included in the Letter of Transmittal and Waiver under the terms and subject to the conditions thereof and of the Exchange Offer and Waiver Solicitation (collectively, the "Tendering Documents").

The method of delivery of the Tendering Documents is at the election and risk of the tendering holders, but delivery will be deemed made only when actually received or confirmed by the Exchange Agent. If such delivery is by mail, it is recommended that registered mail properly insured, with return receipt requested, be used. In all cases, sufficient time should be allowed to permit timely delivery.

Dina will not accept any alternative, conditional or contingent tenders. Each tendering holder, by execution of a Letter of Transmittal and Waiver (or facsimile thereof), waives any right to receive any notice of the acceptance of such tender.

To validly tender Debentures through book-entry transfer, DTC participants should transmit their acceptance through DTC's Automatic Tender Offer Program ("ATOP") and DTC will then edit and verify the acceptance and send an Agent's Message to the Exchange Agent for its acceptance. Delivery of this instrument will not constitute a valid delivery. This Letter of Transmittal and Waiver should be read carefully before an acceptance is transmitted.

DEBENTURE HOLDERS MAY DELIVER THE WAIVER ONLY BY TENDERING THEIR DEBENTURES IN THE EXCHANGE OFFER AND, TO EFFECT A VALID TENDER OF DEBENTURES PURSUANT TO THE TERMS OF THE EXCHANGE OFFER, DEBENTURES HOLDERS MUST GRANT THE WAIVER

By (i) delivery of the Tendering Documents or (ii) transmission of instructions to tender Debentures via ATOP, the registered holder of the Debentures delivering such Tendering Documents or giving such instructions, as applicable, acknowledges that it has received and reviewed the Statement and this Letter of Transmittal and Waiver, which together shall constitute Dina's Exchange Offer. Pursuant to the Statement and this Letter of Transmittal and Waiver, and concurrently with the Exchange Offer, Dina is also soliciting (the "Waiver Solicitation") the grant by such holders of a waiver (the "Waiver") of (a) all payment defaults, including, without limitation, the non-payment of principal, interest, default interest and interest on interest by Dina under the Debentures and the indenture dated as of August 8, 1994, as amended by the First Supplemental Indenture dated as of May 15, 2003, between Dina and Deutsche Bank Trust Company Americas, formerly known as Bankers Trust Company, as trustee (the "Debentures Trustee"), pursuant to which the Debentures were issued (the "Debentures Indenture") prior to the date of the Statement and through the date of consummation of the Exchange Offer as well as all other covenant defaults under the Debentures and the Debentures Indenture which have occurred prior to the date of the Statement and through the date of consummation of the Exchange Offer and (b) any and all legal claims any tendering Debenture Holder has, may have or ever will have against any party in connection with such tendering Debenture Holder's acquisition, ownership or disposition of the Debentures so tendered, including with respect to principal, all interest accrued and payable (of any type) and any interest accrued but not yet due and payable since the last scheduled interest payment date of the Debentures. Delivery of the Waiver will entitle the tendering party to a waiver payment of $50 per $1,000 principal amount of Notes accepted for tender.

By (i) delivery of the Tendering Document or (ii) transmission of instructions to tender Debentures via ATOP, the registered holder of the Debentures delivering such Tendering Documents or giving such instructions, as applicable, tenders such Debentures and grants the Waiver with respect to the Debentures so tendered pursuant to the terms and conditions set forth in the Statement and in this Letter of Transmittal and Waiver.

By transmission of instructions to tender Debentures via ATOP, the DTC participant giving such instructions also represents that it is the registered holder as reflected on the records of DTC of all of the Debentures thereby

tendered and that it has received from each beneficial owner of Debentures (collectively, the "Beneficial Owners") a duly completed and executed form of "Instruction to Registered Holder from Beneficial Owner," attached to the "Letter to Beneficial Owners" accompanying this Letter of Transmittal and Waiver, instructing such DTC participant to take the actions and authorizing such DTC participant to make certain representations on behalf of the Beneficial Owner so instructing.

Any Beneficial Owner of Debentures which are registered in the name of a broker, dealer, commercial bank, trust company or other nominee who wishes to tender Debentures and grant the Waiver should contact such person promptly and instruct such person to tender and consent on behalf of the Beneficial Owner.

Holders who desire to tender their Debentures and receive CVRs and the waiver payment in the Exchange Offer are required to grant the Waiver with respect to the Debentures tendered. The (i) delivery of Tendering Documents or (ii) submission of instructions through ATOP constitutes such a Waiver as well as the making of the representations contained herein. Holders of Debentures may not grant the Waiver without tendering their Debentures. If holders tender their Debentures, they will have granted the Waiver.

Except as described in the Statement, if Dina decides to increase or decrease the amount of Debentures being sought in the Exchange Offer or the consideration offered to Debenture Holders, and if, at the time that notice of such increase or decrease is first published, sent or given to holders of Debentures in the manner specified in the Statement, the Exchange Offer is scheduled to expire at any time earlier than the expiration of a period ending on the tenth business day from and including the date that such notice is first so published, sent or given, then the Exchange Offer will be extended for such purposes until the expiration of such period of ten business days. As used in this paragraph, "business day" has the meaning set forth in Rule 14d-1 (as applicable to Regulation 14E) under the Exchange Act.

The Debentures may be tendered and will be accepted for exchange in $1,000 increments.

The aggregate number of CVRs to be issued and the face amount of each CVR will depend on the amount of Debentures validly tendered for exchange and not withdrawn on or prior to the Expiration Date. The consideration for each $1,000 principal amount of Debentures validly tendered and accepted for payment pursuant to the Exchange Offer shall be one full CVR and the related waiver payment of $50.

CVRs will be issued in fully registered form only, without interest coupons. No fractional CVRs will be issued. Tendering holders of Debentures held through DTC will receive a beneficial interest in a global CVR issued in the name of a nominee of DTC and will receive the waiver payment through DTC. Tendering holders of Debentures held in physical form will receive CVRs in physical form and will receive the waiver payment by check.

If Dina makes a material change in the terms of the Exchange Offer, it will make an announcement as described in the Statement.

2.     Representations and Acknowledgments by Tendering Debenture Holders.

By (i) delivery of the Tendering Documents or (ii) transmission of instructions to tender Debentures via ATOP, the registered holder of Debentures delivering such Tendering Documents or giving such instructions, as applicable, acknowledges that it has received and reviewed the Statement and this Letter of Transmittal and Waiver.

By (i) delivery of the Tendering Documents or (ii) transmission of instructions to tender Debentures via ATOP, and subject to and effective upon acceptance for exchange of the Debentures tendered for exchange herewith, the registered holder of Debentures delivering such Tendering Documents or giving such instructions, as applicable, agrees that it (I) will have irrevocably sold, assigned, transferred and exchanged to Dina all right, title and interest in, to and under all of the Debentures tendered for exchange hereby, (II) will have granted the Waiver with respect to all such Debentures tendered for exchange and (iii) will have appointed the Exchange Agent as the true and lawful agent and attorney-in-fact (with full knowledge that the Exchange Agent also acts as agent of Dina) of such holder of Debentures with respect to such Debentures, with full power of substitution to (a) present such Debentures for transfer on the account books maintained by DTC or Dina (together, in any such case, with all accompanying evidences of transfer and authenticity), to Dina, (b) present and deliver its Waiver and (c) receive all benefits and otherwise exercise all rights and incidents of beneficial ownership with respect to such Debentures, all in accordance with the terms of the Statement.

By (i) delivery of the Tendering Documents or (ii) transmission of instructions to tender Debentures via ATOP, the registered holder of Debentures delivering such Tendering Documents or giving such instructions, as applicable,

also represents and warrants that (X) it is the registered holder on the records of DTC or Dina of the Debentures tendered for exchange hereby; and (Y) when such Debentures are accepted for exchange by Dina, Dina will acquire good and marketable title thereto, free and clear of all liens, restrictions, charges and encumbrances and not subject to any adverse claims. Such registered holder of Debentures will, upon receipt, execute and deliver any additional documents deemed by the Exchange Agent or Dina to be necessary or desirable to complete the exchange, assignment and transfer of, and grant the Waiver with respect to, the Debentures tendered for exchange hereby.

For purposes of the Exchange Offer and Waiver Solicitation, Dina will be deemed to have accepted for exchange, and to have exchanged, validly tendered Debentures and accepted validly delivered and Waivers with respect to such Debentures, if, as and when Dina gives oral or written notice thereof to the Exchange Agent.

Except as described herein and in the Statement, tenders of Debentures and related consents to, and grants of, the Waiver by the holders thereof are irrevocable and may not be withdrawn, unless otherwise required by law or unless the Exchange Offer is terminated or is not consummated by July 31, 2005.

For a withdrawal to be effective, any physical certificate holder of Debentures who has tendered its Debentures may withdraw the tender (and thus simultaneously revoke its Waiver) by delivering written notice of withdrawal (which may be sent by facsimile) to the Exchange Agent at its address set forth herein not prior to August 1, 2005 and not later than 5:00 p.m., New York City time, on the Expiration Date. Any notice of withdrawal must specify (i) the person named in this Letter of Transmittal and Waiver as having tendered the Debentures to be withdrawn, (ii) the certificate numbers and principal amount of the Debentures to be withdrawn, (iii) a statement that such holder is withdrawing its election to have such Debentures exchanged, and (iv) the name of the registered holder of such Debentures, who must sign such notice in the same manner as the original signature on this Letter of Transmittal and Waiver (including any required signature guarantees) by which such Debentures were tendered, or be accompanied by evidence satisfactory to Dina that the person withdrawing the tender has succeeded to the beneficial ownership of the Debentures being withdrawn. The Exchange Agent will return the properly withdrawn Debentures promptly following receipt of a notice of withdrawal.

For a withdrawal to be effective, any holder of Debentures which has tendered Debentures through book-entry transfer may withdraw such Debentures within the timeframe set forth above (and thus simultaneously revoke its Waiver) by withdrawing its acceptance through ATOP. Beneficial Owners of Debentures that wish to withdraw the tender of such Debentures must contact the DTC participant through which such Debentures are held and instruct such DTC participant to effect such withdrawal. In order to withdraw Debentures previously tendered, the DTC participant must withdraw its instruction previously transmitted through ATOP. Such a withdrawal must be executed through ATOP in the same name as such DTC participant's name appears on the original transmission to which such withdrawal relates.

Dina reserves the right to contest the validity of any withdrawal. A purported notice of withdrawal which is not received by the Exchange Agent in a timely fashion will not be effective. Withdrawal or revocation of a prior instruction will be effective only upon receipt of such notice of withdrawal or revocation by the Exchange Agent.

Any permitted withdrawals of tenders of Debentures and revocation of any Waiver may not be rescinded, and any Debentures properly withdrawn will thereafter be deemed not validly tendered and any Waiver revoked will be deemed not validly delivered for purposes of the Exchange Offer; *provided*, that withdrawn Debentures may be retendered and a revoked Waiver may be redelivered by again following the appropriate procedures described herein and in the Statement at any time prior to 5:00 p.m., New York City time, on the Expiration Date.

All questions as to the validity, form and eligibility (including time of receipt) of notices of withdrawal or revocations of a Waiver will be determined by Dina, whose determination will be final and binding on all parties. None of Dina, the Exchange Agent, the Information Agent, or any other person will be under any duty to give notification of any defects or irregularities in any notice of withdrawal or revocation of a Waiver or incur any liability for failure to give such notification.

By (i) delivery of the Tendering Documents or (ii) transmission of instructions to tender Debentures via ATOP, the holder of Debentures or the DTC participant, as applicable, delivering such documentation or giving such instructions acknowledges that Dina's acceptance of Debentures validly tendered for exchange and any Waiver validly delivered with respect to such Debentures pursuant to the procedures described in the section of the Statement and in the instructions hereto will constitute a binding agreement between such registered holder of Debentures or Beneficial Owner, as applicable, delivering such documentation or giving such instructions, as applicable, and Dina upon the terms and subject to the conditions of the Statement.

Except as stated in the Statement, all authority herein conferred or agreed to be conferred shall survive the dissolution of the transmitting holder, and any obligation of such holder hereunder shall be binding upon the successors and assigns thereof.

If Dina extends the Exchange Offer or is delayed in its acceptance for exchange of Debentures or is unable to exchange Debentures pursuant to the Exchange Offer for any reason, then, without prejudice to Dina's rights under such Exchange Offer, the Exchange Agent may, subject to applicable law, retain tendered Debentures on Dina's behalf, and such Debentures may not be withdrawn (subject to Rule 14e-1 under the Exchange Act, which requires that Dina deliver the consideration offered or return the Debentures deposited by or on behalf of the holders promptly after the termination or withdrawal of the Exchange Offer), except to the extent that tendering holders are entitled to withdrawal rights as described in the Statement.

## 3.    Additional Representations and Warranties

By (i) delivery of the Tendering Documents or (ii) transmission of instructions to tender Debentures via ATOP, the registered holders of Debentures delivering such Tendering Documents or giving such instructions, as applicable, further represents to Dina on its behalf, or if such person holds the Debentures for the account of a Beneficial Owner, on behalf of such Beneficial Owner, that the registered holder of Debentures (the applicable party being referred to herein as the "Owner") as follows;

        1.    The Owner is not an "affiliate" (as defined in Rule 144 under the Securities Act) of Dina, is not acting on behalf of Dina and is aware that the offer of CVRs in exchange for Debentures to it is being made in reliance on an exemption from registration under the Securities Act. The Owner understands and agrees that the CVRs are being offered for exchange to holders in a transaction not involving any public offering in the United States within the meaning of the Securities Act, that the CVRs have not been and will not be registered under the Securities Act or any other applicable securities law and that they are being offered in transactions not requiring registration under the Securities Act.

        2.    The Owner is relying on the information contained in the Statement in making its investment decision with respect to the CVRs. The Owner further acknowledges that none of Dina or its respective affiliates or any person representing Dina or its respective affiliates has made any representation to it with respect to Dina, the Exchange Offer and Waiver Solicitation or the CVRs other than the information contained in the Statement. The Owner has had access to such financial and other information concerning Dina and its affiliates and the CVRs as it has deemed necessary in connection with its decision to exchange any of the Debentures for CVRs and grant the Waiver, including an opportunity to ask questions of and request information from Dina and the Information Agent.

        3.    The Owner acknowledges and irrevocably and unconditionally waives, forever releases and discharges (a) Dina and the directors, officers, employees, agents, affiliates, representatives, successors and assigns of Dina (collectively, the "Dina's Agents") and (b) the Debentures Trustee, the principal paying agent, the registrar and the Depositary and their respective directors, officers, employees, agents, parents, affiliates, representatives, successors and assigns (collectively, the "Trustee's Agents") in any and all capacities from and against any and all claims, covenants, promises, agreements, obligations, controversies, losses, damages, costs, expenses, demands, causes of action, judgments, or liabilities of any kind or character whatsoever, whether matured or contingent or known or unknown, including for indemnity and contribution, that the Owner has or may have to the extent it or they arise out of, or in connection with, the Owner's acquisition and holding (or if the Owner is holding on behalf of one or more beneficial owners, such beneficial owners' acquisition and holding) of the Debentures as well as the negotiation and administration, and the performance or lack of performance, of the terms of the Debentures Indenture, related agreements and the Debentures (including, without limitation, resulting from the failure of the Owner to receive payment of the principal amount of, and accrued and unpaid interest on, all Debentures held at any time by the Owner) and any and all related documents and agreements and any other act or inaction of (y) Dina or Dina's Agents and (z) the Trustee or the Trustee's Agents directly or indirectly related to the foregoing in any and all capacities.

        4.    The releases and waivers set forth in paragraph 3 (the "Releases and Waivers") do not constitute a confession or an admission of liability or of wrongdoing on the part of Dina, Dina's Agents, the Trustee or the Trustee's Agents in any and all capacities. It shall not be held or construed as a confession or admission in any subsequent dealings among such parties and the Owner in any suit, proceeding or otherwise. The Releases and Waivers represent the Owner's complete statement on the subject matter hereof (in addition to

waivers elsewhere herein), and the Owner hereby irrevocably and unconditionally acknowledges that no oral or other agreements, understandings, representations or warranties exist with respect to the Releases and Waivers or with respect to the obligations, claims and causes of action being irrevocably and unconditionally released and waived hereunder.

     5.    Either:

(a) No part of the assets to be used by such Owner to acquire and hold the CVRs or any interest therein constitutes or will constitute assets of any (i) employee benefit plan (as defined in Section 3(3) of ERISA) that is subject to Title I of ERISA, (ii) plan (as defined in Section 4975(e)(1) of the Code) that is subject to Section 4975 of the Code or (iii) other entity deemed to be investing "plan assets" (within the meaning of 29 C.F.R. Section 2510.3-101 or otherwise under ERISA) of any such employee benefit plan or plan, including without limitation, as applicable, an insurance company general account (each of (i), (ii) and (iii), a "Plan"); or

(b) The acquisition and holding of the CVRs or any interest therein by such Owner will not constitute a prohibited transaction within the meaning of Section 406 of ERISA or Section 4975 of the Code that is not otherwise exempt by reason of one or more statutory or administrative exemptions.

     6.    Each Owner agrees that (a) any sale, pledge or other transfer of a CVR (or any interest therein) made based upon any false or inaccurate representation made by the holder or a transferee to Dina, will be void *ab initio* and of no force or effect; and (b) neither of Dina nor the CVR Agent has any obligation to recognize any sale, pledge or other transfer of a CVR (or any interest therein) made based upon any such false or inaccurate representation.

## 4.    Signatures on this Letter of Transmittal and Waiver; Bond Powers and Endorsements; Guarantee of Signatures

If this Letter of Transmittal and Waiver is signed by the registered holder of the Debentures tendered herewith, the signature must correspond exactly with the name as written on the face of the certificates without any alteration, enlargement or change whatsoever.

If any tendered Debentures are owned of record by two or more joint owners, all such owners must sign this Letter of Transmittal and Waiver. If any tendered Debentures are registered in different names on several certificates, it will be necessary to complete, sign and submit as many separate copies of this Letter of Transmittal and Waiver as there are names in which tendered Debentures are registered.

If this Letter of Transmittal and Waiver is signed by the registered holder, and CVRs are to be issued and any untendered or unaccepted principal amount of Debentures are to be reissued or returned to the registered holder, then the registered holder need not and should not endorse any tendered Debentures or provide a separate bond power. In any other case, the registered holder must either properly endorse the Debentures tendered or transmit a properly completed separate bond power with this Letter of Transmittal and Waiver (in either case, executed exactly as the name of the registered holder appears on such Debentures), with the signature on the endorsement or bond power guaranteed by an eligible institution, unless such certificates or bond powers are signed by an eligible institution.

If this Letter of Transmittal and Waiver or any Debentures or bond powers are signed by trustees, executors, administrators, guardians, attorneys-in-fact, officers of corporations or others acting in a fiduciary or representative capacity, such persons should so indicate when signing and submit with this Letter of Transmittal and Waiver evidence satisfactory to Dina of their authority to so act.

The signatures on this Letter of Transmittal and Waiver or a notice of withdrawal, as the case may be, must be guaranteed unless the Debentures surrendered for exchange pursuant thereto are tendered (i) by a registered holder who has not completed the box entitled "Special Issuance Instructions" or "Special Delivery Instructions" in this Letter of Transmittal and Waiver or (ii) for the account of an eligible institution. In the event that the signatures in this Letter of Transmittal and Waiver or a notice of withdrawal, as the case may be, are required to be guaranteed, such guarantees must be by an eligible institution, which includes commercial banks and trust companies located or having an office or correspondent in the United States, member firms of a national securities exchange or the National Association of Securities Dealers, Inc., and members of a signature medallion program such as "STAMP." If Debentures are registered in the name of a person other than the signer of this Letter of Transmittal and Waiver,

the Debentures surrendered for exchange must be endorsed by, or be accompanied by a written instrument or instruments of transfer or exchange, in satisfactory form as determined by Dina in its sole discretion, duly executed by the registered holder with the signature thereon guaranteed by an eligible institution.

## 5. Special Issuance and Delivery Instructions

Tendering holders of Debentures should indicate in the applicable box above the name and address to which CVRs issued pursuant to the Exchange Offer and/or substitute Debentures for principal amounts not tendered or not accepted for exchange are to be issued, sent or deposited if different from the name and address or account of the person for exchange are to be issued, sent or deposited if different from the name and address or account of the person signing this Letter of Transmittal and Waiver. In the case of issuance in a different name, the employer identification or social security number of the person named must also be indicated. If no such instructions are given, any CVRs will be issued in the name of, and delivered to, the name and address of the person signing this Letter of Transmittal and Waiver and any Debentures not accepted for exchange will be returned to the name and address of the person signing this Letter of Transmittal and Waiver.

## 6. Backup Federal Income Tax Withholding and Substitute Form W-9

Under United States federal income tax laws, payments that may be made by Dina (or the paying agent) on account of the waiver payment and the CVRs issued pursuant to the Exchange Offer may be subject to backup withholding (currently at a rate of 28%). In order to avoid such backup withholding, each tendering holder should complete and sign the Substitute Form W-9 included in this Letter of Transmittal and Waiver and either (a) provide the correct taxpayer identification number ("TIN") and certify, under penalties of perjury, that the TIN provided is correct and that (i) the holder has not been notified by the Internal Revenue Service that the holder is subject to backup withholding as a result of failure to report all interest or dividends or (ii) the IRS has notified the holder that the holder is no longer subject to backup withholding, or (b) provide an adequate basis for exemption. If the tendering holder has not been issued a TIN and has applied for one, or intends to apply for one in the near future, such holder should write "Applied For" in the space provided for the TIN in Part I of the Substitute Form W-9, sign and date the Substitute Form W-9 and sign the Certificate of Payee Awaiting Taxpayer Identification Number. If "Applied For" is written in Part I, Dina (or the paying agent under the CVR Agreement governing the CVRs) will withhold (currently at a rate of 28%) a portion of the payments made to the tendering holder during the 60-day period following the date of the Substitute Form W-9. If the holder furnished the CVR Agent or Dina with its TIN within 60 days after the date of the Substitute Form W-9, Dina (or the paying agent) will remit such amounts retained during the 60-day period to the holder and no further amounts shall be retained or withheld from payments made to the holder thereafter. If, however, the holder has not provided the CVR Agent or Dina with its TIN within such 60-day period, Dina (or the paying agent) will remit such previously retained amount to the IRS as backup withholding. In general, if a holder is an individual, the taxpayer identification number is the Social Security Number of such individual. If the CVR Agent or Dina is not provided with the correct taxpayer identification number, the holder may be subject to a penalty imposed by the IRS. Certain holders (including, among others, all corporations and certain foreign individuals) are not subject to these backup withholding and reporting requirements. In order for a foreign individual to qualify as an exempt recipient, such holder must submit a statement (generally, IRS Form W-8), signed under penalties of perjury, attesting to that individual's exempt status. Such statements can be obtained from the CVR Agent. For further information concerning backup withholding and instructions for completing the Substitute Form W-9 (including how to obtain a taxpayer identification number if you do not have one and how to complete the Substitute Form W-9 if Debentures are registered in more than one name), consult the enclosed Guidelines for Certification of Taxpayer Identification Number on Substitute Form W-9.

Failure to complete the Substitute Form W-9 will not, by itself, cause Debentures to be deemed invalidly tendered, but may require Dina (or the paying agent) to backup withhold. Backup withholding is not an additional federal income tax. Rather, the federal income tax liability of a person subject to backup withholding will be reduced by the amount of tax withheld. If withholding results in an overpayment of taxes, a refund may be obtained.

## 7. Transfer Taxes

Dina will pay all transfer taxes, if any, applicable to the exchange of Debentures for CVRs pursuant to the Exchange Offer. If, however, CVRs or Debentures for principal amounts not accepted for exchange, or both, are to be delivered to, or are to be registered or issued in the name of, any person other than the person transmitting the original tender instructions, or a transfer tax is imposed for any reason other than the exchange of the Debentures

pursuant to the Exchange Offer, then the amount of any such transfer taxes (whether imposed on the registered holder or any other persons) will be payable by the tendering holder. If satisfactory evidence of payment of such taxes or exemptions therefrom is not submitted when requested, the amount of such transfer taxes will be billed directly to such tendering holder.

**8.    Determination of Validity; Irregularities**

All questions as to the form of all documents and the validity (including the time of receipt), eligibility, acceptance and withdrawal of tendered Debentures will be determined by Dina, in its sole discretion, which determination shall be final and binding. Dina expressly reserves the absolute right to reject any and all tenders not in proper form and to determine whether the acceptance of such tenders would be unlawful. Dina also reserves the absolute right, subject to applicable law, to waive or amend any of the conditions to the Exchange Offer and Waiver Solicitation or to waive any defect or irregularity in the tender of any of the Debentures. None of Dina, the Exchange Agent, the Information Agent or any other person will be under any duty to give notification of any defects or irregularities in tenders or will incur any liability for failure to give any such notification. No tender of Debentures will be deemed to have been validly made until all defects and irregularities with respect to such Debentures have been cured or waived. Any Debentures received by the Exchange Agent that are not properly tendered and as to which irregularities have not been cured or waived will be returned by the Exchange Agent to the appropriate tendering holder as soon as practicable. Dina's interpretation of the terms and conditions of the Exchange Offer and Waiver Solicitation (including this Letter of Transmittal and Waiver) will be final and binding on all parties.

**9.    Waiver of Conditions**

Dina reserves the absolute right to waive, amend or modify certain of the specified conditions as described in the Statement in the case of any Debentures tendered and with respect to which Waivers have been delivered (except as otherwise provided in the Statement).

**10.    Mutilated, Lost, Stolen or Destroyed Debentures**

If any certificate has been lost, mutilated, destroyed or stolen, the holder should promptly notify The Bank of New York, Corporate Trust Operations, Reorganization Unit, 101 Barclay Street, 7 East, New York, NY 10286, Attn: William Buckley. The holder will then be instructed as to the steps that must be taken to replace the certificate. This Letter of Transmittal and Waiver and related documents cannot be processed until the Debentures have been replaced.

**11.    Acceptance of Tendered Debentures and Issuance of CVRs; Return of Debentures**

Subject to the terms and conditions of the Exchange Offer, Dina will accept for exchange all validly tendered Debentures as soon as practicable after the Expiration Date and will issue CVRs therefor as soon as practicable thereafter. For purposes of the Exchange Offer, Dina shall be deemed to have accepted tendered Debentures when, as and if Dina has given written and oral notice thereof to the Exchange Agent. If any tendered Debentures are not exchange pursuant to the Exchange Offer for any reason, such unexchanged Debentures will be returned, without expense, to the name and address shown above.

**12.    Further Assurances**

The holder of Debentures will, upon request, execute and deliver any additional documents deemed by Dina to be necessary or desirable to complete the sale, assignment and transfer of the Debentures tendered hereby. All authority herein conferred or agreed to be conferred in this Letter of Transmittal and Waiver shall survive death or incapacity of such holder and any obligation of such holder hereunder shall be binding upon the heirs, executors, administrators, personal representatives, trustees in bankruptcy, legal representatives, successors and assigns of such holder. This tender may be withdrawn only in accordance with the procedures set forth in the Statement and in the instructions contained in this Letter of Transmittal and Waiver.

**13. Requests for Information or Additional Copies**

Requests for information or for additional copies of the Statement and this Letter of Transmittal and Waiver may be directed to the Exchange Agent at its address or telephone number set forth on the front cover of this Statement.

Please complete the Substitute Form W-9 below.

**PAYOR'S NAME: CONSORCIO G GRUPO DINA, S.A. DE C.V.**

| SUBSTITUTE<br>Form W-9<br>Department of Treasury<br>Internal Revenue Service | Part 1 – PLEASE PROVIDE YOUR TIN IN THE BOX AT RIGHT AND CERTIFY BY SIGNING AND DATING BELOW: | Social Security Number<br><br>OR:<br><br>Employer Identification Number |
|---|---|---|
| Payor's Request for Taxpayer Identification Number ("TIN") Certification | Part 2 – Certification – Under Penalties of Perjury, I certify that:<br><br>(1) The number shown on this form is my correct TIN (or I am waiting for a number to be issued to me);<br><br>(2) I am not subject to backup withholding because (a) I am exempt from backup withholding, (b) I have not been notified by the Internal Revenue Service ("IRS") that I am subject to backup withholding as a result of failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and<br><br>(3) I am a U.S. person (including a U.S. resident alien). | |
| | Part 3 – Awaiting TIN ☐ | |

Certification Instructions – You must cross out item (2) in the box above if you have been notified by the IRS that you are currently subject to backup withholding because of underreporting interest or dividends on your tax return.

Signature _____     Date _____, 2005

NOTE: IF YOU DO NOT COMPLETE AND RETURN THIS FORM YOU MAY BE SUBJECT TO BACKUP WITHHOLDING (CURRENTLY AT A RATE OF 28%) ON PAYMENTS MADE TO YOU. FOR MORE INFORMATION, PLEASE REVIEW THE ENCLOSED GUIDELINES FOR CERTIFICATION OF TAXPAYER IDENTIFICATION NUMBER ON SUBSTITUTE FORM W-9.

NOTE: YOU MUST COMPLETE THE FOLLOWING CERTIFICATE IF YOU CHECKED THE BOX IN PART 3.

## CERTIFICATE OF AWAITING TAXPAYER IDENTIFICATION NUMBER

I certify under penalties of perjury that a taxpayer identification number has not been issued to me, and either (a) I have mailed or delivered an application to receive a taxpayer identification number to the appropriate Internal Revenue Center or Social Security Administration Office or (b) I intend to mail or deliver an application in the near future. I understand that if I do not provide a taxpayer identification number to the payor, a portion of all payments made to me on account of the waiver payment and the CVRs shall be retained until I provide a Taxpayer Identification Number to the payor and that, if I do not provide my Taxpayer Identification Number within 60 days, such retained amounts shall be remitted to the Internal Revenue Service as a backup withholding and a portion of all reportable payments made to me thereafter will be withheld and remitted to the Internal Revenue Service until I provide a Taxpayer Identification Number.

Signature                                          Date

EXHIBIT E

OFFER TO EXCHANGE
AND CONSENT AND RESCISSION OF ACCELERATION AND WAIVER SOLICITATION STATEMENT
DATED APRIL 2, 2003

<div align="center">

**OFFER TO EXCHANGE**

**By**
**CONSORCIO G GRUPO DINA, S.A. DE C.V.**

**Contingent Value Rights**
**For Any And All Of Its Outstanding**
**8% Convertible Subordinated Debentures Due August 8, 2004**

</div>

**AND RELATED CONSENT AND RESCISSION OF ACCELERATION AND WAIVER SOLICITATION**

Consorcio G Grupo Dina, S.A. de C.V. ("Dina" or the "Company") hereby offers to exchange, upon the terms and subject to the conditions set forth in this Offer To Exchange and Consent and Rescission of Acceleration and Waiver Solicitation Statement (this "Statement") and the accompanying Letter of Transmittal and Consent and Rescission of Acceleration and Waiver (the "Letter of Transmittal and Consent and Rescission of Acceleration and Waiver", which, together with this Statement, constitutes the "Exchange Offer"), Contingent Value Rights (CUSIP No. 210306 11 4) (the "CVRs") for up to the entire current outstanding $160.922 million aggregate principal amount of 8% Convertible Subordinated Debentures Due August 8, 2004 (CUSIP No. 210306 AB 2) (the "Debentures") issued by Dina (which amount excludes $3.070 million aggregate principal amount of Debentures held by Dina which will be cancelled upon consummation of the Exchange Offer). Dina has defaulted on interest payments owing in respect of the Debentures and the maturity of the Debentures has been accelerated, although as described herein, in connection with the Exchange Offer, Dina is soliciting the rescission of such acceleration; upon such rescission of acceleration, the Debentures will continue to be subject to acceleration. Dina is offering to exchange one CVR with a face amount of $280 for each $1,000 aggregate principal amount of Debentures tendered. Upon consummation of the Exchange Offer, CVRs will be issued with a maximum aggregate face amount of $45.058 million (assuming the entire $160.922 million of Debentures are accepted for tender). The amount of cash which may be distributed in the future with respect to the CVRs, if any, may be less than or greater than $280 per CVR or an aggregate amount of $45.058 million (or the aggregate face amount of CVRs ultimately issued) depending on future events. The CVRs to be issued in connection with the Exchange Offer will be issued under the CVR Agreement (as defined herein), will not accrue interest and will expire on April 24, 2007 unless extended as described herein.

The CVRs to be issued in connection with the Exchange Offer will be issued promptly following the expiration of the Exchange Offer (the "Exchange Date"). The CVRs shall entitle holders to certain net cash proceeds (as defined herein) received upon the disposition of certain assets and to certain other cash payments received by or on behalf of Dina. Distributions in respect of the CVRs will only be payable upon the receipt of net cash proceeds upon the disposition of such assets or receipt by or on behalf of Dina of certain other cash payments as described herein prior to April 24, 2007 (although in certain limited circumstances, certain payments will be payable to CVR holders subsequent to April 24, 2007); some or all of such events may not occur and, if they do occur, they may not generate sufficient net cash proceeds to generate a payment obligation in respect of the CVRs and certain of such events may not occur within the time frame necessary to generate a payment obligation. Amounts payable upon the occurrence of such events will be determined based upon the amount of the net cash proceeds received in respect of such events and in the case of the sale of MCII Holdings Shares (as defined herein), may vary based upon the date on which such sale occurs. See "Description of the CVRs."

---

**THE EXCHANGE OFFER WILL EXPIRE AT 5:00 P.M., NEW YORK CITY TIME, ON WEDNESDAY APRIL 30, 2003, UNLESS EXTENDED (SUCH DATE, AS THE SAME MAY BE EXTENDED, THE "EXCHANGE OFFER EXPIRATION DATE"). THE EXCHANGE OFFER IS CONDITIONED UPON, AMONG OTHER THINGS, NOT LESS THAN 95% OF THE AGGREGATE PRINCIPAL AMOUNT OF OUTSTANDING DEBENTURES BEING VALIDLY TENDERED. SEE "THE EXCHANGE OFFER AND CONSENT AND RESCISSION OF ACCELERATION AND WAIVER AND SOLICITATION."**

---

Concurrently with the Exchange Offer, Dina is soliciting (the "Consent and Rescission of Acceleration and Waiver Solicitation"): (X) the consent of holders of outstanding Debentures (the "Debenture Holders") to Amendments (the "Amendments") to the terms of the Debentures (insofar as any Debentures remain outstanding after the Exchange Offer) and the indenture dated as of August 8, 1994 (the "Debentures Indenture") between Dina and Deutsche Bank Trust Company Americas, formerly known as Bankers Trust Company, as trustee (the "Debentures Trustee"), pursuant to which the Debentures were issued; (Y) the grant by such holders of the rescission by such holders of the acceleration of the maturity of the Debentures (the "Rescission of Acceleration"); and (Z) the grant by such holders of a waiver (the "Waiver" and, together with the Amendments and the Rescission of Acceleration, the "Amendments, Rescission of Acceleration and Waiver") of (a) all payment defaults, including, without limitation, the non-payment of interest, default interest and interest on interest by Dina under the Debentures and the Debentures Indenture prior to the date of this Statement and through the date of consummation of the Exchange Offer as well as all other covenant defaults under the Debentures and the Debentures Indenture which have occurred prior to the date of this Statement and through the date of consummation of the Exchange Offer and (b) any and all legal claims any tendering Debenture Holder has, may have or ever will have against any party in connection with such tendering Debenture Holder's acquisition, ownership or disposition of the Debentures so tendered, including with respect to all interest accrued and payable (of any type) and any interest accrued but not yet due and payable since the last scheduled interest payment date of the Debentures. The Amendments, Rescission of Acceleration and Waiver will substantially reduce the contractual rights of Debenture Holders not participating in the Exchange Offer although the Debentures will continue to remain subject to acceleration. See "The Exchange Offer and Consent and Rescission of Acceleration and Waiver Solicitation." The Letter of Transmittal and Consent and Rescission of Acceleration and Waiver accompanying this Statement provides Debenture Holders the means to consent to the Amendments, grant the Rescission of Acceleration and grant the Waiver, which upon consummation of the Exchange Offer will become binding on all Debenture Holders whether or not such Debenture Holders are participating in the Exchange Offer; provided that the Waiver, insofar as it relates to payment defaults with respect to the Debentures, will not be binding on the holders of any Debentures which are not tendered pursuant to the Exchange Offer and therefore remain outstanding subsequent to the consummation of the Exchange Offer. **DEBENTURE HOLDERS MAY CONSENT TO THE AMENDMENTS, GRANT THE RESCISSION OF ACCELERATION AND GRANT THE WAIVER ONLY BY TENDERING THEIR DEBENTURES IN THE EXCHANGE OFFER (AND IN THE CASE OF DEBENTURES IN PHYSICAL FORM, DELIVERING A PROPERLY COMPLETED AND EXECUTED LETTER OF TRANSMITTAL AND CONSENT AND RESCISSION OF ACCELERATION AND WAIVER) AND, TO EFFECT A VALID TENDER OF DEBENTURES PURSUANT TO THE TERMS OF THE EXCHANGE OFFER, DEBENTURE HOLDERS MUST CONSENT TO THE AMENDMENTS, GRANT THE RESCISSION OF ACCELERATION AND GRANT THE WAIVER.** No separate payment will be made for the delivery of the consent to the Amendments, the grant the Rescission of Acceleration and the grant of the Waiver. Except as described herein, tenders of Debentures and related consents to, and grants of, the Amendments, Rescission of Acceleration and Waiver by the holders thereof are irrevocable and may not be withdrawn, unless otherwise required by law or unless the Exchange Offer is terminated or is not consummated by June 30, 2003. See "The Exchange Offer and Consent and Rescission of Acceleration and Waiver Solicitation-Withdrawal of Tenders and Revocation of Consents, Rescission of Acceleration and Waiver." In the event the Exchange Offer is consummated, any Debentures not tendered or accepted for exchange will remain outstanding and will be entitled to all rights and subject to the limitations applicable thereto under the Debentures and Debentures Indenture as modified pursuant to the Amendments and as limited pursuant to the Rescission of Acceleration and the Waiver; the maturity of the remaining Debentures will no longer be accelerated but the Debentures will be subject to acceleration.

A valid tender of Debentures in the Exchange Offer will require the delivery of the consent to the Amendments, the grant of the Rescission of Acceleration and the grant of Waiver. If conditions to consummation of the Exchange Offer described herein are not met or waived, the Amendments, the Rescission of Acceleration and the Waiver will not become effective, the Exchange Offer will not be consummated and any Debentures tendered in the Exchange Offer will be returned.

SEE "RISK FACTORS" BEGINNING ON PAGE 17 FOR A DISCUSSION OF CERTAIN FACTORS THAT SHOULD BE CONSIDERED IN CONNECTION WITH THE EXCHANGE OFFER.

THE CVRS HAVE NOT BEEN AND WILL NOT BE REGISTERED UNDER THE U.S. SECURITIES ACT OF 1933 (THE "SECURITIES ACT"). CVRS ARE BEING OFFERED IN EXCHANGE FOR DEBENTURES ONLY TO DEBENTURE HOLDERS IN RELIANCE UPON AN EXEMPTION FROM REGISTRATION PROVIDED BY SECTION 3(a)(9) OF THE SECURITIES ACT AND SIMILAR EXEMPTIONS FROM REGISTRATION PROVIDED BY CERTAIN STATE SECURITIES LAW. THE CVRS WILL NOT BE LISTED ON ANY SECURITIES EXCHANGE OR QUOTED THROUGH ANY AUTOMATED QUOTATION SYSTEM.

*This Statement is being distributed only to Debenture Holders and beneficial owners of Debentures in connection with the Exchange Offer. Any reproduction or distribution of this Statement in whole or in part and any disclosure of its contents or use of any information herein for any purpose other than considering an investment in the CVRs by Debenture Holders and beneficial owners of Debentures is prohibited.*

*In considering an investment in the CVRs, investors holding Debentures should rely on the information contained in this Statement and the Letter of Transmittal and Consent and Rescission of Acceleration and Waiver or the information referred to herein or therein. No person has been authorized to give any information or make any representation not contained in this Statement or the Letter of Transmittal and Consent and Rescission of Acceleration and Waiver and, if given or made, such information or representation may not be relied upon as having been provided or authorized by Dina. This Statement may only be used where it is legal to make the Exchange Offer and Consent and Rescission of Acceleration and Waiver Solicitation. The information in this Statement may only be accurate on the date of this Statement and the delivery of this Statement at any time shall not create any implication that there has been no change in the information set forth in the Statement or in Dina's affairs since the date of this Statement.*

Other than as set forth herein, Dina reserves the right to extend, amend or terminate the Exchange Offer and to determine in its sole discretion whether the conditions to the Exchange Offer have been met or whether to waive any conditions which have not been met.

Dina will not pay any commission or other remuneration to any broker, dealer, salesman or other person for soliciting tenders of Debentures. Dina's officers, directors and employees may solicit tenders from Debenture Holders and will answer inquiries concerning the Exchange Offer, but they will not receive additional compensation for soliciting tenders or answering any such inquiry.

Dina is solely responsible for the contents of this Statement and the terms of the Exchange Offer and none of the Exchange Agent, the Information Agent, the CVR Agent, the trustee of the Mexican Trust, the trustee of the Cayman Trust, the Debentures Trustee, Debentures Holders or any committee thereof, Motor Coach Industries International, Inc., MCII Holdings (USA), Inc. or any other person has any responsibility with respect thereto.

Debenture Holders should direct all inquiries concerning the Exchange Offer and the Consent and Rescission of Acceleration and Waiver Solicitation to D.F. King & Co., Inc., the Information Agent, at the address or telephone number listed on the back cover page of this Statement. If Debenture Holders have questions concerning the procedures for tendering Debentures (and delivering the consents to the Amendments, the grant of the Rescission of Acceleration and the grant of the Waiver), or need assistance in tendering Debentures, they should contact the Exchange Agent at the telephone number and address listed on the back cover page of this Statement. Debenture Holders may contact the Exchange Agent or the Information Agent to receive copies of this Statement or the accompanying Letter of Transmittal and Consent and Rescission of Acceleration and Waiver.

The CVRs may not be publicly offered or sold in Mexico and this Statement may not be publicly distributed in Mexico. Under Mexican law, the CVRs to be issued in connection with this Exchange Offer are subject to registration with the *sección especial* (special section) of the *Registro Nacional de Valores* (National Registry of Securities or "RNV") maintained by the Mexican *Comisión Nacional Bancaria y de Valores* (National Banking and Securities Commission or the "CNBV"). Dina will apply to obtain such registration from the CNBV. Registration of the CVRs with the RNV does not imply certification as to the investment quality of the CVRs, the solvency of Dina or the accuracy or completeness of the information contained in this Statement.

### NOTICE TO NEW HAMPSHIRE RESIDENTS

NEITHER THE FACT THAT A REGISTRATION STATEMENT OR AN APPLICATION FOR A LICENSE HAS BEEN FILED UNDER CHAPTER 421-B OF THE NEW HAMPSHIRE REVISED STATUTES WITH THE STATE OF NEW HAMPSHIRE NOR THE FACT THAT A SECURITY IS EFFECTIVELY REGISTERED OR A PERSON IS LICENSED IN THE STATE OF NEW HAMPSHIRE CONSTITUTES A FINDING BY THE SECRETARY OF STATE THAT ANY DOCUMENT FILED UNDER RSA 421-B IS TRUE, COMPLETE AND NOT MISLEADING. NEITHER ANY SUCH FACT NOR THE FACT THAT AN EXEMPTION OR EXCEPTION IS AVAILABLE FOR A SECURITY OR A TRANSACTION MEANS THAT THE SECRETARY OF STATE HAS PASSED IN ANY WAY UPON THE MERITS OR QUALIFICATIONS OF, OR RECOMMENDED OR GIVEN APPROVAL TO, ANY PERSON, SECURITY, OR TRANSACTION. IT IS UNLAWFUL TO MAKE, OR CAUSE TO BE MADE, TO ANY PROSPECTIVE PURCHASER, CUSTOMER, OR CLIENT ANY REPRESENTATION INCONSISTENT WITH THE PROVISIONS OF THIS PARAGRAPH.

### NOTICE TO FLORIDA RESIDENTS

THESE SECURITIES HAVE NOT BEEN REGISTERED UNDER THE FLORIDA SECURITIES ACT IN RELIANCE UPON AN EXEMPTION THEREFROM. EXCEPT IN THE CASE OF SALES TO BANKS, TRUST COMPANIES, SAVINGS INSTITUTIONS, INSURANCE COMPANIES, BROKER-DEALERS, INVESTMENT COMPANIES, PENSION OR PROFIT-SHARING TRUSTS AND QUALIFIED INSTITUTIONAL BUYERS UNDER RULE 144A, ANY SALE MADE PURSUANT TO SUCH EXEMPTION IS VOIDABLE BY A FLORIDA PURCHASER WITHIN THREE (3) DAYS AFTER THE FIRST TENDER OF CONSIDERATION IS MADE BY SUCH PURCHASER TO THE ISSUER, AN AGENT OF THE ISSUER OR AN ESCROW AGENT IN PAYMENT FOR SUCH SECURITIES.

## NOTICE TO INVESTORS

A Letter of Transmittal and Consent and Rescission of Acceleration and Waiver is being delivered to Debenture Holders with this Statement. Any beneficial owner of Debentures desiring to tender all or any portion of the Debentures owned by such person (and make the required delivery of the consents to the Amendments, the grant the Rescission of Acceleration and the grant the Waiver pursuant to the Consent and Rescission of Acceleration and Waiver Solicitation ) must either (i) in the event a Debenture holder holds Debentures in physical form, deliver (a) a properly completed and duly executed copy of the Letter of Transmittal and Consent and Rescission of Acceleration and Waiver (or facsimile(s) thereof), with any required signature guarantees, (b) all certificates representing the Debentures to be tendered pursuant to the Exchange Offer, (c) a Substitute Form W-9 (or facsimile thereof) and (d) any other documents required to be included in the Letter of Transmittal and Consent and Rescission of Acceleration and Waiver under the terms and subject to the conditions thereof and of the Exchange Offer and Consent and Rescission of Acceleration and Waiver Solicitation (collectively, the "Tendering Documents") to The Bank of New York, as Exchange Agent (the "Exchange Agent"), or (ii) in the event a Debenture holder holds Debentures through the facilities of DTC, electronically transmit its acceptance of the Exchange Offer and the terms of the Letter of Transmittal and Consent and Rescission of Acceleration and Waiver by causing The Depository Trust Company ("DTC") to transfer such beneficial owner's Debentures to the account of the Exchange Agent in accordance with DTC's Automated Tender Offer Program ("ATOP") procedures for such transfer (which delivery shall constitute delivery of the Letter of Transmittal and Consent and Rescission of Acceleration and Waiver). The Exchange Agent must receive, as appropriate, either (i) the Tendering Documents or (ii) an electronic confirmation of such book-entry transfer pursuant to DTC's ATOP procedures indicating the principal amount of Debentures tendered (a "Book-Entry Confirmation"), including an Agent's Message, in each case, prior to 5:00 p.m., New York City time, on the Exchange Offer Expiration Date. In the case of book-entry transfer, if the beneficial owner of Debentures is not a DTC participant holding for its own account, it must request its broker, dealer, commercial bank, trust company or other nominee to effect the transaction for it prior to the Exchange Offer Expiration Date. Beneficial owners holding Debentures through a broker, dealer, commercial bank, trust company or other nominee must contact such person if they desire to tender such Debentures. Debenture Holders may not tender their Debentures by guaranteed delivery unless Dina consents to delivery in such manner. See "The Exchange Offer and Consent and Rescission of Acceleration and Waiver Solicitation — Procedures for Tendering and Consenting."

Notwithstanding any other provision of the Exchange Offer, Dina shall not be required to accept any Debentures for exchange, if certain conditions described herein are not satisfied including the following conditions:

•        less than 95% of outstanding principal amount of the Debentures shall have been validly tendered and accepted for exchange;

•        certain changes occur in the law or legal or regulatory action is threatened which might affect the Exchange Offer;

•        there shall have occurred a certain significant events such as a general trading suspension on the New York Stock Exchange or a national emergency in Mexico or the United States;

•        the Debentures Trustee or the Exchange Agent shall have objected in any respect to, or taken any action that could, in Dina's sole judgment, adversely affect the consummation of the Exchange Offer or the Consent and Rescission of Acceleration and Waiver Solicitation or Dina's ability to obtain the consent to the Amendments, the grant of the Rescission Acceleration and the grant of the Waiver or to effect any of the Amendments, the Rescission of Acceleration or the Waiver, or shall have taken any action that challenges the validity or effectiveness of the procedures used by Dina in the making of the Exchange Offer or in soliciting the consent to the Amendments and the grant of the Rescission of Acceleration or the grant of the Waiver (including the form thereof) or the acceptance for exchange of any of the Debentures; or

•        there exists, in Dina's sole judgment, any other actual or threatened legal impediment to the acceptance for exchange of, or exchange for, any of the Debentures or the implementation or validity of the Exchange Offer or the Consent and Rescission of Acceleration and Waiver Solicitation.

Dina reserves the right at any time to waive certain of the conditions to the Exchange Offer in any respect and to extend or terminate the Exchange Offer. There can be no assurance that such conditions will be satisfied or waived. Prior to the Exchange Offer Expiration Date, Dina reserves the right at any time to otherwise modify or amend the Exchange Offer in any respect. See "The Exchange Offer and Consent and Rescission of Acceleration and Waiver Solicitation —Conditions."

Upon consummation of the Exchange Offer, any of the Debentures that are not exchanged will remain outstanding and will remain subject to the Debentures Indenture as amended by the Amendments and as limited by the Rescission of Acceleration and the Waiver. The Amendments will eliminate or modify certain of the covenants contained in, and circumstances constituting Events of Default under, the Debentures Indenture and the Waiver will be effective to waive any rights of non-tendering Debenture Holders with respect to any of Dina's defaults under the Debentures and the Debentures Indenture, other than payment defaults, occurring prior to the consummation of the Exchange Offer. Pursuant to the grant of the Rescission of Acceleration, the maturity of the Debentures will no longer be accelerated but the Debentures will be subject to acceleration.

Adoption of the Amendments, the grant of the Rescission of Acceleration and the grant of the Waiver may have adverse consequences for Debenture Holders that do not validly tender Debentures in the Exchange Offer.

This Statement has not been filed with or reviewed by any federal or state securities commission or regulatory authority, nor has any such commission or authority passed upon the accuracy or adequacy of this Statement. Any representation to the contrary is unlawful and may be a criminal offense.

Investors should not construe the contents of this Statement as investment, legal or tax advice. Investors should consult their counsel, accountant and other advisors as to legal, tax, business, financial and related aspects of any exchange of Debentures for CVRs and the Consent and Rescission of Acceleration and Waiver Solicitation. Dina makes no representation regarding the legality of any exchange of Debentures for CVRs under applicable legal investment or similar laws.

In making an investment decision regarding the CVRs offered by this Statement, investors must rely on their own examination of Dina and the terms of this Exchange Offer including, without limitation, the merits and risks involved. The Exchange Offer is being made on the basis of this Statement.

**The information contained in this Statement has been provided by Dina or has been obtained from other sources Dina believes to be reliable. The financial statements and other information relating to Motor Coach Industries International, Inc. and MCII Holdings (USA), Inc. contained in this Statement has not been obtained by Dina directly from Motor Coach Industries International, Inc. or MCII Holdings (USA), Inc. for use herein. Neither Motor Coach Industries International, Inc. nor MCII Holdings (USA), Inc. has consented to the use of such information in this Statement and nor has Motor Coach Industries International, Inc. nor MCII Holdings (USA), Inc. participated in any way in the preparation of this Statement. By participating in this Exchange Offer, participants expressly agree that neither Motor Coach Industries International, Inc. nor MCII Holdings (USA), Inc. or their respective affiliates, stockholders, officers, directors, employees or agents shall have any liability with respect to any aspect of the Exchange Offer or the information contained or referred to herein.**

This Statement contains summaries of some of the terms of specific documents, but reference is made to the actual documents, copies of which (including copies of proposed forms of such documents to the extent applicable) will be made available upon request, for the complete information contained in those documents. All summaries are qualified in their entirety by this reference.

Neither Dina nor any other person makes any recommendation to any holder as to whether or not to exchange Debentures for CVRs and consent to the Amendments, grant the Rescission of Acceleration and grant the Waiver. If given or made, any recommendation should not be relied upon as having been authorized by Dina. Debenture Holders must make their own decision as to whether to exchange Debentures for CVRs and consent to the Amendments, grant the Rescission of Acceleration and grant the Waiver. **No representative has been retained to act on behalf of** the Debenture Holders **in connection with the Exchange Offer or to prepare any report as to the fairness of the** terms thereof.

Although Dina has no obligation to do so, Dina reserves the right in the future to seek to acquire Debentures not tendered pursuant to this Exchange Offer by means of open market purchases, privately negotiated acquisitions, subsequent exchange or tender offers, redemption or otherwise, at prices or on terms that may be, different from, higher or lower or more or less favorable than the terms of this Exchange Offer. Furthermore, as described herein, Dina may in its sole discretion subsequent to the consummation of the Exchange Offer elect to issue CVRs in exchange of Debentures upon the same economic terms as in the Exchange Offer.

The distribution of this Statement and the Exchange Offer may be restricted by law in some jurisdictions and no action is being taken to permit the consummation of the Exchange Offer or the distribution of this Statement in any jurisdiction where such action would be required. Persons coming into whose possession this Statement must inform themselves about, and observe, any restrictions. This Statement does not constitute an offer to exchange or a solicitation of an offer to exchange any CVRs with any person in any jurisdiction where it is unlawful to make such an offer or solicitation.

Questions and requests for assistance or for additional copies of this Statement or the accompanying Letter of Transmittal and Consent and Rescission of Acceleration and Waiver may be directed to D.F. King & Co., Inc., the Information Agent, at the address and telephone number set forth on the back cover of this Statement.

# Table of Contents

ENFORCEABILITY OF CIVIL LIABILITIES AGAINST FOREIGN PERSONS .................................................. 1

PRESENTATION OF CERTAIN FINANCIAL INFORMATION .......................................................... 1

SUMMARY ............................................................................................................................................ 2

RISK FACTORS ................................................................................................................................... 17

EXCHANGE RATES ............................................................................................................................ 22

RATIO OF EARNINGS TO FIXED CHARGES ................................................................................... 23

THE COMPANY ................................................................................................................................... 24

MANAGEMENT'S DISCUSSION AND ANALYSIS OF FINANCIAL CONDITION  AND RESULTS
OF OPERATIONS ....................................................................................................................... 29

REASONS FOR THE EXCHANGE OFFER ......................................................................................... 33

THE EXCHANGE OFFER AND CONSENT AND RESCISSION OF ACCELERATION AND WAIVER
SOLICITATION ........................................................................................................................... 34

MARKET PRICE OF THE DEBENTURES ........................................................................................... 44

DESCRIPTION OF THE DEBENTURES .............................................................................................. 44

AMENDMENTS AND WAIVERS WITH RESPECT TO THE DEBENTURES ................................... 48

DESCRIPTION OF THE CVRS ............................................................................................................ 51

DIRECTORS, SENIOR MANAGEMENT AND EMPLOYEES ............................................................ 61

MAJOR SHAREHOLDERS AND RELATED PARTY TRANSACTIONS ............................................ 64

TAXATION ........................................................................................................................................... 65

ANNEX A — AUDITED FINANCIAL STATEMENTS OF CONSORCIO G GRUPO DINA, S.A. DE C.V. FOR
THE YEARS ENDED DECEMBER 31, 2000 AND DECEMBER 31, 2001 ......................................... A-1

ANNEX B — UNAUDITED FINANCIAL STATEMENTS OF CONSORCIO G GRUPO DINA, S.A. DE C.V.
FOR THE NINE MONTHS ENDED SEPTEMBER 30, 2002 ................................................................ B-1

ANNEX C — EXTRACT OF DINA'S AUDITED FINANCIAL STATEMENT FOR THE YEAR ENDED
DECEMBER 31, 2000 WHICH PROVIDES A DESCRIPTION OF THE PRINCIPAL DIFFERENCES
BETWEEN MEXICAN GAAP AND U.S. GAAP ................................................................................. C-1

ANNEX D — AUDITED FINANCIAL STATEMENTS OF MOTOR COACH INDUSTRIES INTERNATIONAL
FOR THE YEAR ENDED DECEMBER 31, 2001 ............................................................................... D-1

ANNEX E — UNAUDITED FINANCIAL STATEMENTS OF MOTOR COACH INDUSTRIES
INTERNATIONAL FOR THE NINE MONTHS ENDED SEPTEMBER 30, 2002 ................................ E-1

Modifications and amendments of the Debentures Indenture may be made by Dina and the Debentures Trustee with the consent of the holders of more than 50% in aggregate principal amount of the then outstanding Debentures; provided, however, that no such modification or amendment may, without the consent of the holder of each outstanding Debenture affected thereby, (a) change the stated maturity of the principal of, or any installment of interest on any Debenture, (b) reduce the principal amount of, or the premium or interest on, any Debenture, (c) change the place or currency of payment of principal of, or premium or interest on, any Debenture, (d) impair the right to institute suit for the enforcement of any payment on or with respect to any Debenture; (e) adversely affect the right to convert Debentures, (f) modify the subordination provisions in a manner adverse to the Debenture Holders, (g) reduce the above-stated percentage of outstanding Debentures necessary to modify or amend the Debentures Indenture, (h) reduce the percentage of aggregate principal amount of outstanding Debentures necessary for waiver of compliance with certain provisions of the Debentures Indenture or for waiver of certain defaults, or (i) change the obligations of Dina to pay the Additional Amounts as described above.

The holders of more than 50% in aggregate principal amount of the then outstanding Debentures may waive any past default under the Debentures Indenture, except a default in payment of principal, premium or interest, and a default under certain covenants of the Debentures Indenture.

**Debentures Trustee**

Deutsche Bank Trust Company Americas, formerly known as Bankers Trust Company, a New York banking corporation, with its principal trust office in New York, New York, is the Debentures Trustee under the Debentures Indenture and has been appointed by Dina as Registrar and Paying Agent with regard to the Debentures.

## AMENDMENTS AND WAIVERS WITH RESPECT TO THE DEBENTURES

DINA IS CURRENTLY IN VIOLATION OF A NUMBER OF COVENANTS UNDER THE DEBENTURES AND A NUMBER OF EVENTS OF DEFAULTS UNDER THE DEBENTURES HAVE OCCURRED AND ARE CONTINUING. THE MATURITY OF THE DEBENTURES HAS BEEN ACCELERATED. UPON CONSUMMATION OF THE EXCHANGE OFFER AND PURSUANT TO THE RESCISSION OF ACCELERATION, THE ACCELERATION OF THE MATURITY OF THE DEBENTURES WILL BE RESCINDED BUT DUE TO THE CONTINUING PAYMENT DEFAULT WITH RESPECT TO THE DEBENTURES, THE MATURITY OF THE DEBENTURES REMAINING OUTSTANDING WILL CONTINUE TO BE SUBJECT TO ACCELERATION.

### Amendments of the Debentures Indenture

Concurrently with the Exchange Offer, Dina is seeking the consent of Debenture Holders to Amendments to the Debentures Indenture which will substantially reduce the contractual rights of Debenture Holders described below. The Letter of Transmittal and Consent and Rescission of Acceleration and Waiver accompanying this Statement provides Debenture Holders with the means to consent to the Amendments. Under the Debentures Indenture, the consent of holders (not affiliated with Dina) representing not less than a majority in aggregate principal amount of the outstanding Debentures is required to effect the Amendments. Dina is seeking the consent to the Amendments to increase Dina's flexibility following the consummation of the Exchange Offer. The Amendments will become effective consummation of the Exchange Offer and will be binding on all Debenture Holders not tendered pursuant to the Exchange Offer.

As a result of the Amendments, Dina would no longer be subject to most of the restrictive covenants and certain events of default currently governing the Debentures and the Rescission of Acceleration may become effective. Dina believes that following the consummation of the Exchange Offer, the total remaining principal amount of the Debentures would not justify the continued existence of those provisions.

The Amendments would eliminate the following covenant set forth in the Debentures Indenture:

*Maintenance of Properties.* Section 1006 of the Debenture Indenture requires Dina, subject to certain limitations, to cause all material properties used or useful in the conduct of its business or the business of any

EXHIBIT F

COUNTY OF _____ COURT

WESTON FUNDING LLC

Plaintiff(s)

against

CONSORSIO G. GRUPO DINA, S.A. DE C.V.

Defendant(s)

~~~~
Index No. 05CV 983C

**AFFIDAVIT OF
SERVICE OF SUMMONS**
**(AND COMPLAINT)**

STATE OF NEW YORK, COUNTY OF QUEENS          SS:   The undersigned, being duly sworn, deposes and says; deponent is not party herein, is over 18 years of age and resides at Amityville NY 11701

That on  11/22/05  at  1:10 P  M., at  60 Wall St  NY NY 10005  deponent served the within summons, *and complaint on*  CONSORSIO G GRUPO DINA S.A DE CV            defendant therein named

INDIVIDUAL
1. ☐   by delivering a true copy *of each* to said defendant personally; deponent knew the person so served to be the person described ɪ said defendant therein.

CORPORATION
2. ☒   a                corporation, by delivering thereat a true copy *of each* to  STANLEY BULE  personally, deponent knew said corporation so served to be the corporation described in said summons as said defendant an knew said individual to be  trustee                 thereof.

SUITABLE AGE PERSON
3. ☐   by delivering thereat a true copy *of each* to                           a person of suitable ag and discretion. Said premises is defendant's—actual place of business—dwelling place—usual place of abode—within the state

AFFIXING TO DOOR, ETC.
4. ☐   by affixing a true copy *of each* to the door of said premises, which is defendant's—actual place of business—dwelling place— usual place of abode—within the state. Deponent was unable, with due diligence to find defendant or a person of suitable ag and discretion thereat, having called there

MAILING TO
RESIDENCE
USE WITH 3 OR 4
6A. ☐   Within 20 days of such delivery or affixing, deponent enclosed a copy of same in a postpaid envelope properly addressed tc defendant at defendant's last known residence, at                                             and deposited said envelope in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State.

MAILING TO
BUSINESS
USE WITH 2 OR 4
5B. ☒   Within 20 days of such delivery or affixing, deponent enclosed a copy of same in a first class post paid envelope properly addressed to defendant at defendant's actual place of business, at  60 Wall St NY NY 10005  in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State. The envelope bor the legend "Personal and Confidential" and did not indicate on the outside thereof, by return address or otherwise, that the communication was from an attorney or concerned an action against the defendant.

DESCRIPTION
USE WITH
1, 2, OR 3
☒

| | | | | | |
|---|---|---|---|---|---|
| ☒ Male | ☒ White Skin | ☒ Black Hair | ☐ White Hair | ☐ 14-20 Yrs. | ☐ Under 5' | ☐ Under 100 Lbs. |
| ☐ Female | ☐ Black Skin | ☐ Brown Hair | ☒ Balding | ☐ 21-35 Yrs. | ☐ 5'0"-5'3" | ☐ 100-130 Lbs. |
| | ☐ Yellow Skin | ☐ Blonde Hair | ☐ Mustache | ☐ 36-50 Yrs. | ☐ 5'4"-5'8" | ☐ 131-160 Lbs. |
| | ☐ Brown Skin | ☐ Gray Hair | ☐ Beard | ☒ 51-65 Yrs. | ☒ 5'9"-6'0" | ☒ 161-200 Lbs. |
| | ☐ Red Skin | ☐ Red Hair | ☒ Glasses | ☐ Over 65 Yrs. | ☐ Over 6' | ☐ Over 200 Lbs. |

Other identifying features:

USE IN
NYC CIVIL CT.
☐   The words "CONSUMER CREDIT TRANSACTION" were prominently displayed at the top of the summons(es) and the additional legend was printed in not less than 12 point bold upper case type on the summons(es) pursuant to 22 NYCRR §208.6(d) and (f).

MILITARY
SERVICE
☐   I asked the person spoken to whether recipient was in active military service of the United States or of the State of New York in any capacity whatever and received a negative reply. Recipient *wore ordinary civilian clothes and no military uniform.* The source of my information and the grounds of my belief are the conversations and observations above narrated. Upon information and belief I aver that the recipient is not in military service of New York State or of the United States as that term is defined in either the State or in the Federal statutes.

Sworn to before me on 11/23/05

LISA R. PETERSON
Notary Public, State of New York
No. 41-47123
Qualified in Queens County
Commission Expires February 28, 2007

PRINT NAME BENEATH SIGNATURE

Michael J Mono
1187431

INSTRUCTIONS: Check appropriate boxes and fill in blanks. Delete inappropriate italicized language and military service allegation if not applicable.

EXHIBIT G

Jones Day
222 E. 41st Street
New York, NY 10017
212-326-3780 (tel)
212-755-7306 (fax)
emakl@jonesday.com

"Stan Burg" <stan.burg@db.com>

11/23/2005 09:42 AM

To tdezottis@JonesDay.com, emakl@JonesDay.com
cc gusseia@dina.com.mx, miguvel@dina.com.mx, pbourigas@
Subject Consorcio G Grupo Dina

Please be advised that on November 22, 2005 we were served with a Sum
Complaint ( CASE NUMBER 05 CV 09830 Judge Sweet) Weston Funding, LLC,
Plaintiff V. Consorcio G Grupo Dina, S. A. DE C.V. addressed to the Co
c/o Deutsche Bank, AG, New York.  Plaintiff's Attorney is listed as:

MAHLER & HARRIS, P.C.
125-10 Queens Boulevard, Suite 311
Kew Gardens, New York 11415
Tel # 718 268-6000

Do you still represent the Company in this matter.  Please advise prom

Stan Burg


Stanley Burg
Deutsche Bank Trust Company Americas
Trust & Securities Services
MS NYC60-2720
60 Wall Street
New York, NY 10005-2858

Phone: 212 250-5280
Fax:  212 797-0022
Email: stan.burg@db.com



---

This e-mail may contain confidential and/or privileged information. If
not the intended recipient (or have received this e-mail in error) plea
notify the sender immediately and destroy this e-mail. Any unauthorized
copying, disclosure or distribution of the material in this e-mail is s

EXHIBIT H

## LMT Capital Management, LLC
### 450 Park Avenue, 20th Floor
### New York, NY  10022
### (212) 888-4560

August 3, 2005

Mr. Stanley Burg
Deutsche Bank Trust Services
60 Wall Street
New York, NY 10005

Dear Mr. Burg:

We are heading a bond holders committee comprised of four distinct bond holders of the
Consorcio G Grupo Dina, S.A. de C.V. 8% Convertible Subordinated Debentures due
2004 (the "Debentures"), representing 26.05% of the current outstanding of 24,261,000.
The holders we represent are:

| Name | Amount | Participant # | Participant Name |
|------|--------|---------------|------------------|
| Weston Funding | 5,221,000 | 226 | National Financial Services |
| Gruntal/GMS | 400,000 | 443 | Pershing |
| Uri Weinstein | 200,000 | 005 | Goldman Sachs |
| Morgan Stanley Dean Witter | 500,000 | 015 | Morgan Stanley Dean Witter |
| **TOTAL** | 6,321,000 | | |

As holders of more than 25% of the Debentures we are hereby instructing you to institute
a lawsuit to enforce the rights of all the holders under the indenture.  We hereby request
that the Trustee commence a judicial proceeding immediately on behalf of all the
remaining Convertible Subordinated Debentures and demand payment of all principal and
past due accrued interest.

Sincerely Yours,

John Liegey
Chairman and CEO

EXHIBIT I

# LMT Capital Management, LLC
### 450 Park Avenue, 20th Floor
### New York, NY  10022
### (212) 888-4560

October 21, 2005

Mr. Stanley Burg
Deutsche Bank Trust Services
60 Wall Street
New York, NY 10005
VIA REGISTERED MAIL

Dear Mr. Burg:

We are heading a bond holders committee comprised of four distinct bond holders of the
Consorcio G Grupo Dina, S.A. de C.V. 8% Convertible Subordinated Debentures due
2004 (the "Debentures"), representing 26.05% of the current outstanding of 24,261,000.
The holders we represent are:

| Name | Amount | Participant # | Participant Name |
|---|---|---|---|
| Weston Funding | 5,221,000 | 226 | National Financial Services |
| Gruntal/GMS | 400,000 | 443 | Pershing |
| Uri Weinstein | 200,000 | 005 | Goldman Sachs |
| Morgan Stanley Dean Witter | 500,000 | 015 | Morgan Stanley Dean Witter |
| TOTAL | 6,321,000 | | |

We are hereby:

1. Providing the Trustee again (as evidenced already in our August 3, 2005 letter;
   attached) with notice of a continuing Event of Default on the Debentures, as no
   interest payment has been made since July 15, 2000 and no principal payment was
   made at the maturity date of August 8, 2004. It is hereby our declaration that we
   have satisfied the indenture requirement for the Trustee receiving this notification
   more than sixty (60) days ago.
2. As holders of more than 25% of the Debentures we are hereby instructing you to
   institute a lawsuit to enforce the rights of all the holders under the indenture. It is
   hereby our declaration that we have satisfied the requirement for the Trustee under
   this letter AND our letter dated August 3, 2005 (attached).
3. Weston Funding hereby agrees to indemnify the trustee for up to $50,000 for cost,
   expenses, and liabilities.  We consider this to fulfill the Indenture requirement of
   "offering the Trustee reasonable indemnity" (Indenture Section 507.3)
4. We hereby request that the Trustee commences a judicial proceeding immediately
   on behalf of all the remaining Convertible Subordinated Debentures and demands
   payment of all principal and past due accrued interest.

Sincerely Yours,

John R. Liegey
Chairman and CEO

**EXHIBIT J**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
                                    :

WESTON FUNDING, LLC,              :   05 Civ. 9830 (RWS)
                                    :   ECF CASE

        Plaintiff,             :

                                    :   **<u>PROPOSED THIRD</u>**
        -against-             :   **<u>AMENDED COMPLAINT</u>**
                                    :

CONSORCIO G GRUPO DINA, S.A. DE C.V., :  **Plaintiff Demands a**
                                  :   **Trial By Jury**
        Defendant.           :
-------------------------------------------------------- x

Plaintiff Weston Funding, LLC ("Weston"), by its attorneys Reiss Eisenpress LLP, for its complaint against the above-named defendant, alleges:

### <u>THE PARTIES</u>

1. Weston is a limited liability company duly organized and existing under the laws of the State of Delaware authorized to do business in the State of New York, with its principal place of business located at 450 Park Avenue, Suite 2001, New York, New York 10022.

2. Upon information and belief, defendant Consorcio G Grupo Dina S.A. de C.V. ("Dina") is a Mexican corporation.

3. Dina has appointed Deutsche Bank Trust company Americas ("DBTCA")(formerly known as Bankers Trust Company ("BTC")) at its registered office at 60 Wall Street, New York, New York 10005, as agent for service of process in the State of New York under section 112 of the Indenture (as defined below).

### <u>JURISDICTION AND VENUE</u>

4. This is a civil action for breach of contract and fraudulent conveyance.

5.This Court has subject matter jurisdiction over the claims pursuant to 28 U.S.C. §1332 (a)(2)in that the parties are citizens of a state and citizens or subjects of a foreign state and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

6.Venue is proper in this district pursuant to 28 U.S.C. §1391(a) and (b).

7.By the terms of Section 112 of the Indenture (defined below) Dina irrevocably submitted to and accepts the jurisdiction of any state or federal court sitting in the borough of Manhattan in the City of New York.

## ALLEGATIONS COMMON TO ALL CLAIMS

8.Under a certain indenture dated August 8, 1994 as supplemented on May 15, 2003 (the "Indenture") Dina issued $164,000,000 of its 8% Convertible Subordinated Debentures with a maturity date of August 8, 2004 (the "Debentures"). A copy of the Indenture is annexed hereto as Exhibit A.

9.On or about February 26, 1999, Weston purchased $5,221,000 of the Debentures. The Weston certificate representing its ownership of these Debentures is annexed hereto as Exhibit B.

10. At the time it purchased the Debentures, Weston also became a payee under the terms of the Promissory Note securing the payment on the Debenture at maturity.

11. Dina failed to make a scheduled interest payment due on January 15, 2001.

12. Dina failed to make any interest or principal payments after January 15, 2001.

13. The Debentures matured and became due and payable on August 8, 2004.

14. Despite due demand therefore, Dina has failed to satisfy its obligations under the terms of the Indenture.

15. Dina has failed to satisfy its obligations under the terms of the Note.

16. At the time of Weston's purchase of the Debentures, there existed some debt to other creditors, which debt was defined in Section 101 of the Indenture as "Senior Indebtedness", most of which was held by third-party (non-insider) creditors, including. debt to CONACYT, (Mexico's Natural Science and Technology Council) in the amount of Three-Million Seven Hundred Thousand ($3,700,000.00) dollars which was incurred by Dina in 1997 to build new cabs for the trucks being built by Dina Camiones S.A. de C.V ("Dina Camiones"), a wholly owned Dina subsidiary, and a debt Dina Camiones owed to Banco Nacional Commercio Exterior ("BNCE") in the amount of Five-Million ($5,000,000.00) Dollars.

17. Prior to Weston's purchase of the Debentures, another of Dina's wholly owned subsidiaries, Dina Trucks did a private placement of securities which were to mature on June 30, 2000, a default on which would have triggered a cross-default provision on some Motor Coach Industries ("Motor Coach") debentures which would in turn have threatened the viability of Motor Coach Industries which entity was also owned by Dina through MCI Holdings.

18. In order to avoid this default, Dina entered into negotiations with Joseph Littlejohn and Levy, Inc. ("JLL")(now known as JLL Partners) to sell approximately sixty-three percent (63%) of Motorcoach for a price based upon an enterprise value of Seven-Hundred and Sixty Million ($760,000,000.00) dollars.

3

19. Upon the closing of the Motor Coach sale to JLL, and after the payment of various debts, Dina received approximately seventy million, three-hundred thousand ($70,300,000.00) dollars in cash (the "Motor Coach Proceeds").

20. Upon information and belief, over the course of the next several years, this cash was used by Dina for related party transactions rather than to pay either the Senior Indebtedness or the Debenture holders.

21. Upon information and belief, some portion of the Motor Coach Proceeds was loaned to a series of truck dealerships owned by the Gomez-Flores family and Gomez-Flores family controlled entities which loans ultimately went into default.

22. Upon information and belief, some portion of the Motor Coach Proceeds, (totaling approximately $14,000,000.00) was paid directly to Rafael Gomez-Flores as CEO of Dina.

23. Upon information and belief some portion of the Motor Coach Proceeds was used to purchase a $10 million dollar life insurance policy on the life of Rafael Gomez-Flores, which policy was cashed in six months after the closing when Rafael Gomez- Flores was reported to have died suddenly.

24. At the same time as the Motor Coach Proceeds were being disbursed throughout various Gomez-Flores affiliated entities, the Gomez-Flores family and/or its owned or controlled entities, were purportedly loaning money to Dina to cover various liabilities which were incurred at their direction, including but not limited to (i) certain purported "contingent" liabilities not reflected on Dina's balance sheet and (ii) repayment of the debts owed to CONACYT and BNCE (the Mexican Government Trade Development Bank).

25. By dissipating the Motor Coach Proceeds and then causing Dina to incur liability, Dina created a situation whereby the Gomez-Flores family became the holders of all (or almost

4

all) of the Senior Indebtedness the repayment of which (or default thereon) Dina (through the Gomez-Flores family) controlled such that Dina could at any time claim default of the Senior Indebtedness to the detriment of the remaining Debenture holders who Dina now claims are not entitled to be paid given the default on the Senior Indebtedness.

26. The various transfers of the Motor Coach Proceeds were made without fair consideration.

27. The various transfers of the Motor Coach Proceeds rendered Dina insolvent and left it with an unreasonably small capital.

28. The various transfers of the Motor Coach Proceeds were made with the knowledge that Dina had or would incur debts beyond its ability to pay as those debts matured.

29. The various transfers of the Motor Coach Proceeds were made with the actual intent to hinder, delay or defraud the Debenture holders.

30. Upon information and belief, Dina made other transfers without fair consideration to various members of the Gomez-Flores family and/or entities owned or controlled by the Gomez-Flores family, including but not limited to transfers of assets to one or more entities owned by Senator Raymundo Gomez-Flores, the patriarch and leader of the family controlled entities and a politically influential government official.

31. Upon information and belief, as of the date of the commencement of this action, approximately 96% of Dina is owned or controlled by the Gomez-Flores family through their holding company Grupo Emprasarial G, S.A. de C.V.

32. As a result of the May 15, 2003 and June 7, 2005 Exchange Offers, there remains only $24,445,000 in outstanding Debentures.

33. The principal amount due from Dina to Weston on the Debentures is $5,221,000.

34. In accordance with the terms of both the Note and the Debentures, interest on the principal amount accrues on a semi-annual basis at a rate of 8% per annum which through October 19, 2005 totaled $2,197,460.89 plus penalty interest.

35. The Indenture Section 112 provides for the application of New York law.

36. Weston complied with the provisions of Section 507 of the Indenture

### FIRST CLAIM
### (BREACH OF CONTRACT)

37. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-34 hereof as if fully set forth herein.

38. Dina's failure to pay to Weston the principal and interest due to it constitutes a breach of Dina's obligations under the terms of the Indenture.

39. Dina's failure to pay to Weston the principal and interest due to it constitutes a breach of Dina's obligations under the terms of the Note.

40. As a result of Dina's breaches of the Indenture and the Note, Weston has been damaged in an amount to be determined at trial but no less than $5,221,000.00 plus interest at a rate of 8% per annum which continues to accrue to this date plus penalty interest.

### SECOND CLAIM
### (FRAUDULENT CONVEYANCE)
(Pursuant to N.Y. Debt. & Cred. Law §§ 273, 274, 275 and 276)

41. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 40 hereof as if fully set forth herein.

6

42. The transfers made by Dina to various Gomez-Flores family members and/or related or affiliated entities constitute fraudulent conveyances under New York Debtor & Creditor Law §§ 273, 274, 275 and 276.

43. In light of the foregoing fraudulent conveyances, Plaintiff has suffered damages in an amount to be determined at trial but no less than $5,221,000.00 plus interest at a rate of 8% per annum which continues to accrue to this date plus penalty interest.

<div align="center">

**THIRD CLAIM**
**(For Attorneys' Fees and Costs Pursuant to N.Y. Debt. & Cred. Law § 276-a)**

</div>

44. Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 43, as if fully set forth herein.

45. Plaintiff has incurred and will continue to incur attorneys' fees and costs in connection the prosecution of this action.

46. Plaintiff is entitled to recover the fees and costs so expended.

**WHEREFORE**, Plaintiff respectfully demands judgment against Defendant as follows:

(a)         against Defendants on the FIRST and SECOND claims, compensatory damages in the amount of no less than Five Million Two-Hundred and Twenty-One Thousand ($5,221,000.00) plus interest at a rate of 8% per annum accrued semi annually which continues to accrue to date and which through October 19, 2005 totaled Two-Million one hundred and ninety seven thousand four hundred and sixty and 89/100 ($2,197,460.89) Dollars plus penalty interest in an amount to be determined at trial;

(b)     on the THIRD claim, an award in an amount to be determined at trial;

(c)     such other and further relief as the Court deems just and proper.

Dated: New York, New York
        February 23, 2006

                                        WESTON FUNDING, LLC,

                                        By its attorneys,

                                        _____
                                        Sherri L. Eisenpress (SE-2531)
                                        Matthew Sheppe (MS-9406)
                                        **REISS EISENPRESS LLP**
                                        425 Madison Avenue
                                        New York, New York 10017-1110
                                        (212) 753-2424

Of counsel:

Ariel Berschadsky
67 Wall Street, 22nd Floor
New York, New York  10005-3111

8